Filed 5/18/26  P. v. Leung CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>WYN LEUNG,<br><br>       Defendant and Appellant. | A170937<br><br>(San Francisco City &County<br>Super. Ct. No. SCN231869) |

After defendant Wyn Leung stabbed his wife to death, a jury convicted him of murder (Pen. Code, § 187, subd. (a)),[1] domestic violence (§ 273.5, subd. (a)), and violating a domestic violence protective order resulting in physical injury (§ 166, subd. (c)(2)).  The jury also found true that defendant personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)) and inflicted great bodily injury while committing domestic violence.  (§ 12022.7, subd. (e).)  For these, and additional crimes to which he pleaded no contest, defendant was sentenced to an aggregate term of 25 years to life.

Defendant raises a single issue on appeal—that the trial court erred in giving CALCRIM No. 378, the general consciousness of guilt instruction.  The instruction, as edited to reflect the evidence in the case, advised the jury in pertinent part that if defendant "stabbed himself or resisted detention, that

---

[1]  All further statutory references are to the Penal Code.

conduct may show that he was aware of his guilt." Defendant does not claim there was no substantial evidence of self-harm, as there was eye-witness testimony that immediately after defendant grabbed and stabbed his wife, he began stabbing himself in the chest and then said, " 'I will be in jail, too. I have to kill myself, too[.]' " Rather, he asserts that because CALCRIM No. 378 was added to CALCRIM's compendium of approved instructions four years after he committed the crimes of which he was convicted, giving the instruction violated his due process rights. He also complains the prosecutor did not include the instruction in her pretrial list of requested instructions and asked for the instruction late in the trial, after defendant testified to his self-harm and statement. In addition, he maintains the jury must have improperly relied on the instruction in finding defendant acted with premeditation. We affirm.

**DISCUSSION[2]**

### Due Process

Defendant is correct that CALCRIM No. 378 was adopted by the Judicial Council four years after he committed his crimes. (See CALCRIM No. 378 [noting, "New March 2022"].) However, while this instruction may have been a "new" CALCRIM instruction, defendant is incorrect in urging the substance of the instruction was new and therefore including it in the instructions to the jury violated his due process rights.

The Judicial Council adopted CALCRIM No. 378 in the wake of *People v. Pettigrew* (2021) 62 Cal.App.5th 477 (*Pettigrew*). In that case, the defendant was convicted of first degree murder of his female roommate and on appeal argued, among other things, that the trial court had erred in giving

---

[2] We include pertinent factual and procedural background in our discussion of the arguments defendant has advanced on appeal.

the "standard 'flight' instruction" (CALCRIM No. 372), which the prosecutor had then argued to the jury allowed it to consider defendant's " 'attempt[] to commit the ultimate flight after he was in police custody,' " namely an attempt to commit suicide. (*Pettigrew,* at pp. 482, 496.)

The Court of Appeal agreed with the defendant that the trial court had erred in giving the standard flight instruction. But not because the law did not recognize that self-harm or attempted self-harm could be evidence of consciousness of guilt. To the contrary, the court cited to case law as early as 1956 recognizing the relevance of such evidence. It explained: "In *People v. James* (1976) 56 Cal.App.3d 876 . . . , the court observed that, in an appropriate case, a defendant's postarrest suicide attempt to evade prosecution 'can be said to constitute circumstantial evidence of guilt,' and the evidence may support a jury drawing 'a reasonable inference of consciousness of guilt.' (*James*, at p. 890.) Other courts have also recognized that evidence of a defendant's attempted suicide after the commission of a crime constitutes relevant circumstantial evidence of guilt if the evidence supports an inference that the suicide attempt was an effort to evade prosecution. (*People v. Sorrentino* (1956) 146 Cal.App.2d 149, 161 . . . ['There was also evidence of consciousness of guilt on the part of appellant, since he stated that he would have committed suicide if the officers had not taken his gun.']. . . .)" (*Pettigrew, supra,* 62 Cal.App.5th at p. 498.)

Rather, the Court of Appeal ruled it had been error to give CALCRIM No. 372 because, while " ' " '[f]light requires neither the physical act of running nor the reaching of a far-away haven[,] . . . [f]light manifestly does require . . . a purpose to avoid being observed or arrested.' " ' (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.)" (*Pettigrew, supra,* 62 Cal.App.5th at p. 497.) There was no evidence, however, the defendant had any such

3

purpose. "As defendant contends, he did not 'flee or try to flee after the crime.' Instead, when the police arrived to perform a welfare check on Cowen, they discovered defendant lying in his bed in a fetal position. And there is no evidence he tried to escape from custody after his arrest. Therefore, the record simply did not contain substantial evidence to support instructing the jury with CALCRIM No. 372, and the trial court should not have done so." (*Pettigrew, supra,* 62 Cal.App.5th at p. 499.)

The court went on to observe that "[u]nfortunately, there [was] no general use consciousness of guilt limiting instruction that could have been used here." (*Pettigrew, supra,* 62 Cal.App.5th at p. 500.) It urged the Judicial Council to rectify this gap in the CALCRIM instructions, stating: "Because the courts have held evidence of any type of postoffense conduct that tends to prove the defendant's consciousness of guilt is relevant and may be admissible . . . , pursuant to rule 2.1050(d) of the California Rules of Court, we respectfully suggest the Judicial Council consider drafting a more general instruction that might be used in cases that do not fit within the existing, specific consciousness of guilt instructions." (*Pettigrew,* at p. 500, fn. 7.)[3]

The following year, the Judicial Council did exactly as *Pettigrew* urged. With the promulgation of CALCRIM No. 378, the Judicial Council provided a template instruction for use in cases in which a consciousness of guilt instruction is appropriate, but the circumstances are other than those

---

[3] The court pointed out the "official California criminal jury instructions promulgated by the Judicial Council include four specific instructions on how a jury may consider evidence of a defendant's actions as consciousness of his or her guilt. (CALCRIM No. 362 [false statements], No. 371 [suppression & fabrication of evidence], No. 372 [flight] & No. 2130 [refusal to submit to chemical test upon arrest for driving under the influence of alcohol and/or drugs].)" (*Pettigrew, supra,* 62 Cal.App.5th at pp. 499–500.)

addressed by the specific consciousness of guilt instructions (e.g., CALCRIM Nos. 362, 371, and 372).

In sum, there is no merit to defendant's claim that by instructing the jury with CALCRIM No. 378, the trial court subjected defendant to "new" law thereby compromising his due process rights. To the contrary, the law as to which the jury was instructed has been on the books for more than seven decades.

***Timely Request for Instruction***

As we have mentioned, the prosecutor did not include CALCRIM No. 378 on her pretrial list of requested instructions but requested the instruction orally at a conference prior to closing arguments. Defendant suggests this was an unfair ambush. We therefore briefly summarize the procedural chronology leading to the prosecutor's request.

At a pretrial conference, the court and the parties discussed the admissibility of the evidence of defendant's stabbing himself and saying he would kill himself. Defense counsel commented the evidence was "fair game under the Evidence Code."

In a break during jury selection, the court and the parties discussed whether evidence of defendant's struggle with police and statements he made at that time constituted evidence of conscientiousness of guilt. Defense counsel agreed "a truncated version [of this evidence] would be appropriate" under that proffered theory of admissibility.

Later, at a conference on jury instructions prior to closing arguments, the prosecutor asked that CALCRIM No. 378 be given. Defense counsel stated the instruction was not "the law in 2018," when the charged crimes were committed. The trial court stated, in turn, "[t]his is new, as of March

5

2022" but it was "inclined to give it." Defense counsel then asked to review the instruction, whereupon the trial court agreed to "table that for now."

There was no further discussion of CALCRIM No. 378 on the record, and without objection the trial court gave the instruction, edited to reflect the circumstances of the case.

Given this procedural history, defendant has forfeited any complaint about the timing of the prosecutor's request that the jury be instructed on CALCRIM No. 378. The only arguable "objection" defense counsel ever made to the timing of the prosecutor's request was that he wanted time to review the instruction, which the trial court gave him. Indeed, counsel effectively invited any supposed error based on the timing of the prosecutor's request by allowing the jury to be instructed without objection *after* counsel had asked for and been granted time to review the requested instruction. To preserve any argument as to the timing of the prosecutor's CALCRIM No. 378 request, it was incumbent on counsel, after he reviewed the instruction, to not only make an objection on the record, but to specifically state the grounds thereof. (See *People v. Campbell* (2020) 51 Cal.App.5th 463, 498 ["As a general rule, failure to object to an instruction forfeits the issue on appeal."].)

In any case, even if the issue were preserved, defendant cites no authority remotely suggesting that asking for a form CALCRIM jury instruction after trial commences, but before closing arguments, compromises a defendant's due process rights.

6

### *No Issue as to Identity of Perpetrator*

Defendant lastly claims the prosecutor requested CALCRIM No. 378 for the improper purpose of suggesting to the jury that consciousness of guilt was tantamount to premeditation.

To begin with, defendant has also forfeited this claim given that, after having had a chance to review CALCRIM No. 378, he made no objection to giving the instruction, let alone on the basis that it was an ill-disguised effort by the prosecutor to encourage the jury to reject the defendant's claim he acted in the heat of the moment and find, instead, that defendant acted with premeditation.

But even had the issue been preserved, there is no merit to his assertion that the trial court committed prejudicial error in instructing the jury with CALCRIM No. 378.

Defendant is correct that consciousness of guilt, in and of itself, does not establish that the defendant harbored the requisite mens rea at the time he committed the charged crime. (See *People v. Doane* (2021) 66 Cal.App.5th 965, 983 (*Doane*) [defendant's flight from the scene of a vehicle crash "was relevant to prove that he was aware he had done something wrong, but it was not relevant to establish that he was aware of or effectively admitted to having acted with gross negligence as opposed to ordinary negligence"].)

This does not mean, however, that evidence of a defendant's conduct after committing the alleged crime, including conduct indicating consciousness of guilt, is irrelevant to the defendant's intent at the time he committed the criminal act. (See *Doane, supra,* 66 Cal.App.5th at p. 981 [positing that a defendant's flight and refusal to aid the victim of a serious motor vehicle accident he had just caused would be relevant to whether the defendant acted with conscious disregard of human life].)

It also does not mean that instructing on consciousness of guilt is necessarily error, let alone prejudicial error, in any case where the defendant does not disavow that they committed the alleged criminal act and disputes only their intent while doing so. In *People v. Thornton* (2007) 41 Cal.4th 391 (*Thorton*), our Supreme Court explained why that is so in a case like the one before us, where the defendant pleaded not guilty and went to trial on the charged offenses.

In *Thorton,* the defendant argued "the instructions improperly allowed the jury to consider evidence of acts showing consciousness of guilt as also amounting to evidence of his state of mind at the time of the murder . . . , i.e., that he killed [the victim] in furtherance of robbery and kidnapping." (*Thornton*, *supra*, 41 Cal.4th at p. 437.) "Preliminarily," stated the high court, "we cannot accept defendant's premise that because he conceded his guilt of felony murder, as to homicide the trial should have been limited to resolving the truth of the special circumstance allegations. In view of defendant's not guilty plea, the prosecution was required to prove beyond a reasonable doubt each material fact of the crimes charged. '[T]he fact remained that defendant did not plead guilty to any of the charges and the jury had before it the issue of guilt on all charges.' (*People v. Breaux* (1991) 1 Cal.4th 281, 304 . . . ; see *People v. Rowland* (1992) 4 Cal.4th 238, 260. . . .) Thus, the trial court was required to instruct the jury on all issues." (*Ibid.*)

The court then addressed the defendant's more specific argument that "because his identity was not at issue the consciousness-of-guilt instructions were improper." (*Thornton, supra,* 41 Cal.4th at p. 438.) The court rejected this assertion, as well, stating: "Instructions on consciousness of guilt are proper not only when identity is at issue, but also when 'the accused admits some or all of the charged conduct, merely disputing its criminal

8

implications.' (*People v. Turner* [(1990)] 50 Cal.3d 668, 694, fn. 10 [discussing CALJIC No. 2.52 and addressing circumstances in which the prosecution theorized defendant intentionally murdered and robbed, and defendant admitted killing but claimed doing so in self-defense with no intent to kill and, denied intending to steal from the victim].)" (*Ibid*.)

As in *Thorton*, defendant here pleaded not guilty and went to trial on the murder charge. Therefore, all issues were before the jury, and the prosecution was "required to prove beyond a reasonable doubt each material fact of the crimes charged." (*Thorton, supra,* 41 Cal.4th at p. 437.) The trial court, in turn, was required to instruct the jury "on all issues." (*Ibid*.) Likewise, that defendant did not dispute that he killed his wife but claimed he did not do so with premeditation, did not render the consciousness of guilt instruction erroneous. (See *Id.* at p. 438.)

Defendant's reliance on this court's opinion in *Doane, supra,* 66 Cal.App.5th 965, is misplaced. In that case, the jury sent a note to the trial court during deliberations asking: " 'Can we consider the action of fleeing the scene after the [car] accident and those behaviors as gross negligence, even if we consider the accident and conditions leading up to it as ordinary negligence?' " (*Id.* at p. 978.) Defense counsel "stated he thought the answer to that question was 'no, that the time for assessing the ordinary or gross negligence for [that count] is the time of the act, not his time of fleeing.' " (*Ibid*.) The prosecutor disagreed and proposed that the court "should refer the jury to CALCRIM No. 372 on flight." (*Id.* at pp. 978–979.) Defense counsel responded, " 'I think that there is a correct legal answer that we can give . . . beyond just referring [the jurors] to the flight instruction, and I think it really goes to the [u]nion of [a]ct and [i]ntent issue and they're asking whether they can base intent on something that occurred after the

end of the act, and I think the answer to that is clearly no. . . .' [I]t would be 'inviting them to consider [the flight] evidence for a purpose it cannot be considered for.' " (*Id.* at p. 979.) The prosecutor countered "Doane's 'behavior after the incident [was] circumstantial evidence of the intent at the time.' Specifically, the evidence of flight bore on 'his regard for human life and the degree to which he cares about the consequences of his actions. . . .' " (*Ibid.*) "Defense counsel did not disagree with this point, but he reaffirmed his interpretation of the jury's inquiry as 'suggest[ing] that [the jurors] . . . *already determined the mental state at the time of the offense and they're not looking at it for that purpose. They're looking at it to judge [Doane's] mental state after the accident even if they think he only had ordinary negligence at the time of the accident.'* " (*Ibid.*, italics added.)

The trial court chose to refer the jury to the instructions on flight, ordinary negligence, and gross negligence. (*Doane, supra,* 66 Cal.App.5th at p. 979.) Further, it told the jury to " 're-refer to CALCRIM [No.] 372 wherein it states[,] "If you conclude the defendant fled it is up to you to decide the meaning and importance of that conduct." ' " (*Id.* at p. 980.) Thus, the court "removed from focus the two other main parts of CALCRIM No. 372 as given: that flight 'may show that [Doane] was aware of his guilt' and that 'evidence that [he] fled cannot prove guilt by itself.' " (*Id.* at p. 982.)

On appeal, this court agreed with Doane that the trial court had erred in answering the jury's question and specifically by how it referred to the CALCRIM flight instruction.

Preliminarily, however, we pointed out that a defendant's conduct after commission of a crime can be relevant to intent at the time the crime was committed. We, thus, observed: "Crucially, the jury did not ask only whether it could 'consider the action of fleeing the scene after the accident and those

10

behaviors as gross negligence,' which might reasonably be interpreted as a question about whether it could rely on postcrash acts to infer that Doane acted with gross negligence in causing the collision. If that had been the jury's question, we would agree with the Attorney General that the answer to it was yes. [Citation.] For example, the jury could have relied on Doane's failure to aid [the victim] to infer that Doane acted with a conscious disregard for human life before the crash." (*Doane, supra,* 66 Cal.App.5th at p. 981.) Thus, "the instructions on flight, ordinary negligence, and gross negligence to which the court rereferred the jury were correct as originally given." (*Id.* at p. 982.)

The problem in *Doane,* as defense counsel had argued in the trial court, was that the jury's question "amounted to . . . asking whether, 'if [the jury] believed the manner in which [he] drove his truck reflected only ordinary negligence, . . . his subsequent flight from the scene [could] provide proof of gross negligence so as to permit a guilty verdict for the felony offense.' " (*Doane, supra,* 66 Cal.App.5th at p. 981.) In other words, the jury was asking if a finding that Doane *later* acted with gross negligence could supplant a finding that he *earlier* acted (i.e., at the time he committed the charged crime) with only ordinary negligence. In short, "as a whole, the question asked whether the jury, if it believed that Doane's actions before the crash were merely negligent, could nevertheless find Doane guilty of gross vehicular manslaughter based on his grossly negligent postcrash behavior." (*Ibid.*) "The answer to that question," we said, "is clearly no." (*Ibid.*)

We went on to explain why the two parts of the flight instruction the trial court effectively excised in re-referring the jury to the instruction—that flight " 'may show that [Doane] was aware of his guilt' " and that " 'evidence that [he] fled cannot prove guilt by itself' "—were significant and

11

"particularly so in light of the jury's question." (*Doane, supra,* 66 Cal.App.5th at p. 982.) " ' "[A]s the jury would understand it, [the flight instruction] does not address the defendant's specific mental state at the time of the offenses, or [the defendant's] guilt of a particular crime, but advises of circumstances suggesting [the defendant's] consciousness [of having] committed some wrongdoing." ' " (*Ibid.,* quoting *People v. Loker* (2008) 44 Cal.4th 691, 705– 707; *Locker* at p. 707 [court has therefore "repeatedly rejected the claim that the flight instruction 'permit[s] the jury to draw impermissible inferences about the defendant's mind state, or [is] otherwise inappropriate where mental state, not identity, is the principal disputed issue' "].)

The trial court's effective removal of the full context of the flight instruction, leaving only that portion informing a jury " 'that it is up to you to decide the meaning and importance of' " a defendant's flight, "contradict[ed] this principle, because it read[] as broadly authorizing the jury to rely on evidence of flight for *any* purpose the jury deem[ed] appropriate." (*Doane, supra,* 66 Cal.App.5th at p. 983, italics added.) In the case before it, "the jury was specifically asking whether it could convict Doane of gross vehicular manslaughter based on postcrash behavior, including flight, that it deemed grossly negligent," and given *that* circumstance, the court's referral of the jury to the flight instruction was error. (*Ibid.*)

We rejected the Attorney General's argument that we should nevertheless presume the jury applied the flight instruction correctly. (*Doane, supra,* 66 Cal.App.5th at p. 983; see *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088 [jurors are generally assumed to be " ' "intelligent persons and capable of understanding and correlating all jury instructions which are given" ' "].) In contrast with the usual case, in *Doane* "the jury's question signaled that it did *not* understand a key rule on which it had

12

already been instructed. Where a jury has expressed confusion about a legal principle, it is no longer appropriate to assume that the jury can just 'figure it out' from the instructions as a whole. Instead, the focus must be on whether the trial court's answer was sufficient to dispel the confusion." (*Doane,* at p. 983.) And in *Doane,* it did not. (*Ibid.*)

We went on to conclude that the court's erroneous answer to the jury, in addition to the prosecutor's erroneous discussion of the circumstantial evidence instruction, amounted to prejudicial cumulative error. We pointed out the evidence did not overwhelmingly establish gross negligence and "the jury's question raised a real possibility that it believed Doane acted with only ordinary negligence in causing the crash." (*Doane, supra,* 66 Cal.App.5th at p. 985.) The errors, in turn, "improperly conveyed to the jury that it (1) did *not* have to resolve its doubts between gross and ordinary negligence in favor of ordinary negligence and (2) *could* rely on postcrash gross negligence to convict even if it believed Doane acted with ordinary negligence before the crash. In this context, we concluded there was a reasonable probability that at least one of the jurors would have voted to acquit Doane of gross vehicular manslaughter had the errors not occurred." (*Ibid.*)

The circumstances in the case now before us differ significantly. We are not dealing here with a note from the jury indicating it had found the defendant had not acted with the requisite intent at the time of the killing and wanting to know if it could look to the defendant's intent while engaging in subsequent conduct to supply the missing requisite intent. Nor are we dealing with an answer to a jury question that refers to an instruction that has been given but effectively excises two of the critical provisions thereof, with the result the jury is effectively told it can make whatever use of the evidence it wants.

13

To the contrary, here we are dealing with a case where the defendant pleaded not guilty to the murder charge, putting all the elements of the crime at issue. (See *Thornton, supra,* 41 Cal.4th at p. 437.) The trial court gave CALCRIM No. 378 once, in conjunction with all the other closing instructions. The prosecutor ultimately made no reference to CALCRIM No. 378 in her closing argument, nor to consciousness of guilt generally. The prosecutor did refer to defendant's stabbing himself after he had killed his wife, but did so in rebutting defendant's claim that he had acted in the heat of passion and was guilty only of voluntary manslaughter (on which the jury was instructed). This was not an improper reference to this evidence. (See *Doane, supra,* 66 Cal.App.5th at p. 982.) The jury thereafter asked no question about the instruction.

Thus, unlike in *Doane,* we can, and do, presume that the jury understood and followed the instructions given it and, specifically, that it did not read the consciousness of guilt instruction to mean finding consciousness of guilt was tantamount to finding premeditation. (See *People v. Chhoun* (2021) 11 Cal.5th 1, 30; *People v. Pierce* (2025) 114 Cal.App.5th 508, 534.)

## DISPOSITION

The judgment is AFFIRMED.

_____

Banke, J.

We concur:

_____

Humes, P. J.

_____

Smiley, J.

A170937, People v. Leung

15